DECISION
{¶ 1} In this original action, relator, Kim Pretzer ("relator"), requests a writ of mandamus ordering respondent, State Teachers Retirement Board of Ohio ("STRB"), to vacate its decision which terminated relator's disability retirement benefits and order STRB to find that relator continues to be entitled to those benefits.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that relator has not demonstrated that STRB abused its discretion in terminating his disability retirement benefits, and recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision in which he essentially re-argues the same points addressed in the magistrate's decision.
 {¶ 4} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except that we have changed paragraph seven to reflect that STRB required relator to see Dr. Kissel in 1998, not "June 1998." In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Writ of mandamus denied.
BRYANT and FRENCH, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Kim Pretzer, :
Relator, :
v. : No. 05AP-1162
State Teachers Retirement Board of Ohio, :
Respondent. :
 MAGISTRATE'S DECISION Rendered on June 1, 2006 Walter J. Gerhardstein, Jr., for relator.
Jim Petro, Attorney General, and John E. Patterson, for respondent.
 IN MANDAMUS {¶ 5} Relator, Kim Pretzer, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, State Teachers Retirement Board of Ohio ("STRB"), to vacate its decision which terminated relator's disability retirement benefits and ordering STRB to find that relator continues to be entitled to those benefits.
Findings of Fact:
 {¶ 6} 1. Relator filed an application for disability benefits in April 1992. At the time, relator was employed by Lancaster City Schools as an "Instrumental Music Instructor," for grades 5 through 12.
 {¶ 7} 2. The superintendent for Lancaster City Schools listed relator's job duties as follows: "Mr. Pretzer is an instrumental music instructor for grades 5 through 12. Additionally, he is responsible for the high school marching band, symphonic band, swinging Gales, and pep band." Part of relator's responsibilities included traveling to the nine different schools within the district. The record indicates that relator began experiencing syncopic seizures which caused him to lose consciousness without any warning. David J. Dunbar, M.D., certified that relator was incapacitated from the performance of his duties as a teacher and that, in Dr. Dunbar's opinion, the disability was not expected to resolve within 12 months.
 {¶ 8} 3. In his March 3, 1992 letter, Dr. Dunbar stated as follows:
It is my opinion, at the present time, that Kim Pretzer suffers from Complex Partial Seizures which are only partially under control with medication on Tegretol. He continues, however, to have episodes of syncope and seizures even on the medication. Because of this, he is now restricted from driving automobiles. Also, the continuing seizures have placed a great deal of stress on Mr. Pretzer. This is because he is quite fearful that he might have another seizure without any forewarning.
Since the seizures have not been brought under control at this point, it would be my opinion that Mr. Pretzer is presently disabled from his present job as a teacher and band director for the next twelve (12) months. Hopefully, after that period of time, the seizures will be brought under better control and is foreseeable that he might be able to return to work at that time if the seizures are under better control.
 {¶ 9} 4. Relator was also examined by Lowell R. Quenemoen, M.D., who concluded as follows:
Mr. Pretzer at this point therefore has a history of seizure disorder and this includes generalized tonic clonic seizures. These have been unpredictable and have recurred in spite of what would seem to be an adequate medication regimen. Therefore the prognosis for complete control of these seizures is markedly restricted. His job description requires that he be driving and with the history of seizures, that is an impossibility. I therefore feel that at this time he is completely disabled because of his seizure history. I suspect that this is going to be a permanent impairment, although it is possible that with revision of medications and possible new medications in the future, that the seizures can again be controlled. In addition to his seizure problem he at this time also has the fractured humerus which involved his right arm and therefore further severely limits his activity.
 {¶ 10} 5. Relator's application for disability benefits was granted effective July 1, 1992.
 {¶ 11} 6. In the following years, relator was examined by many doctors in an effort to determine the etiology for his seizures and to bring those seizures under control.
 {¶ 12} 7. In June 1998, STRB sent relator to be examined by John T. Kissel, M.D. In his April 1, 1998 report, Dr. Kissel ultimately concluded that relator was capable of performing his prior job at that time. Specifically, Dr. Kissel noted as follows:
This patient has a history of complex partial seizures with rapid secondary generalization. His seizures are now under good control on a regime of Neurontin and Depakote. He also complains of mild depression and cervical pain, although these do not appear to be major parts of his problem. Fatigue also is significant.
On the basis of the findings today, it appears clear that the patient was not capable at his prior job as a band director from at least 1992 until 4/96. On that occasion, he got his license back and was able to drive. From a strictly neurologic perspective, he appears to have been capable of performing his job as a band director over the last two years. I must stress that this opinion is based principally on the fact that he is now able to drive and his seizures have been under excellent control. This opinion does not include considerations related to the impact of his having seizures in front of a group of middle school or grade school students, or the possibility that he may have to take frequent absences due to seizures and be unable to drive.
While there is no question that his current job is more suitable for his status as an epilepsy patient. Objectively, however[,] he does appear capable of doing his prior job as a band director.
 {¶ 13} 8. Relator's then treating physician, Ira J. Goodman, M.D., continued to be of the opinion that relator was presently incapacitated from teaching duties. Specifically, in his March 20, 1998 letter, Dr. Goodman noted as follows concerning relator's seizures:
* * * With his current anticonvulsant medication, he has had no definite seizures now for about 2 years; however, he has gone seizure-free in the past for up to a year and a half and then began experiencing recurrent seizures. * * * As mentioned above, he currently has been seizure-free now for several years; however, obviously there is no guarantee that he will remain seizure-free in the future. He states he had been under a very stressful job in Ohio with him being a music coordinator teaching at 9 elementary schools as well as being a band leader, and it does appear that stress can lower the seizure threshold in some individuals. It would therefore most likely be in the patient's best medical interest to avoid unnecessary stressors as he appears to be in a very favorable environment at this time, and as mentioned above, is at least at this time seizure-free.
 {¶ 14} 9. Relator also submitted medical reports from other doctors who noted that relator had other medical conditions. Specifically, in a report dated September 2, 1998, Avanish M. Aggarwal, M.D., indicated that relator suffers from irritable bowel syndrome ("IBS") which necessitates that he be close to a bathroom. Relator also submitted the July 27, 1994 report of Warren G. Harding, III, M.D., who noted that relator has minor disc problems in his neck. Theodore F. Hoff, M.D., discussed an MRI of relator's neck which showed degenerative change at C5-6.
 {¶ 15} 10. Upon review of the medical evidence, STRB ultimately determined that relator was not physically capable of resuming his former work at that time and continued his disability.
 {¶ 16} 11. Approximately six years later, in 2004, STRB scheduled an examination with John P. Conomy, M.D. In his August 4, 2004 report, Dr. Conomy noted relator's history as follows:
* * * Mr. Pretzer * * * taught band and music related subjects traveling about he [sic] community of Lancaster, Ohio to do so.
HISTORY
Mr. Pretzer now resides in Orlando, Florida. He has been employed in the travel business for about nine or ten years and for six of these years, has run his own travel agency. * * *
Mr. Pretzer developed epilepsy in 1992. His seizures were both of grand mal and complex partial variety. In the course of seizure, some occurring in the course of his work, he suffered major injuries involving breaking his teeth, lacerating himself by falls through plate glass doors, dislocations of his right shoulder and a variety of other less threatening bumps and bruises. He is now taking Neurontin 300 mg four times daily and Depakote 1 gram daily and his seizures are under excellent control. He has not had seizures of any type since 1996. He drives an automobile and basically is unrestricted in anything that he does.
His neurologic problems are presently controlled and quiescent. He has other health issues that are not. He suffers inflammatory bowel disease and has problems with obstipation and occasionally with diarrhea. He is being treated for gastroesophageal reflux disorder as well. (a list of his medications are attached). He states that these conditions are active and that when he "has to go, he has to go" but he does not suffer incontinence. He is also being treated for a variety of allergies with medications as they are listed.
* * * With particular reference to his seizures, he has not had seizures now in eight years.
On the issue of disability, Dr. Conomy concluded as follows:
IMPRESSION
1. Mixed Seizure Disorder (Major motor seizures and Complex partial seizures) presently and medically controlled.
2. History of gastroesophageal reflux disorder, multiple nasal allergies and irritable bowel syndrome.
I reviewed a series of imaging studies he brings with him, these done last June at his home. The MRI of his spine (he complains of spinal pain) shows a very substantial spondylitie bar and disk complex at C4-5 and C5-6. This complex obliterates the subarachnoid space and corrugates the spinal cord, but does not compress nerves. He has spondylitic change of lesser degree throughout his spine.
At this point, it is my opinion that Mr. Pretzer is no longer disabled. Return to work, however, is another matter. He has not had seizures in eight years and his seizures are well controlled. On the other hand, he has had substantial injuries with attacks. Given his degree of medical management I do not see any restriction to be placed on him now and including work, because of his seizure disorder. He should not work at heights and with dangerous instrumentality such as moving equipment. These things do not bear upon his teaching role or his work as a travel agent.
 {¶ 17} 12. In response to the medical evidence presented, the doctors who comprised the medical board recommended that relator's disability retirement be terminated as, in their opinion, relator was no longer permanently disabled and was capable of resuming his usual teaching duties. (See reports at pages 76 through 79 of the record.)
 {¶ 18} 13. In response, relator, through counsel, submitted additional evidence for consideration. Those reports include the following: (1) the November 12 and December 27, 2004 reports of Dr. Goodman who noted as follows:
* * * He has a history of epilepsy, which over the last several years has been well controlled[.] * * * Seizure control also is dependent on good health habits, such as adequate sleep, nutrition as well as minimizing stress as much as possible, along with taking medication regularly. He also has severe spinal axis pain, including neck and back. He has well documented degenerative changes in his neck, including several level disc herniations, which seem to have progressed from an imaging standpoint based on the radiology report. He also has multilevel disc degeneration in the lumbar area. Other symptoms include daytime sleepiness, which may or may not be related to medication. He also is being evaluated for a sleep disorder.
In addition to the above-mentioned disorders, he also is being treated for depression. He also has GI disorders, including "irritable bowel syndrome" and GERD.
Despite the above, he has been able to operate a small business, though is able to modify his work schedule to accommodate his medical conditions. I would be concerned that he would not be able to return to employment requiring a more rigid schedule, such as a band director or music teacher, the schedule of which he would have no control over, and the demands for which could have a negative impact on his health.
(2) the November 10, 2004 report of David F. Cowan, M.D., whose report essentially mirrors the report of Dr. Goodman; (3) MRI results showing degenerating discs bulges and osteophyte primarily at C5-6 and C6-7; (4) the June 23, 2004 report of Kenneth M. Neigut, M.D., who examined an MRI of relator's brain and specifically noted as follows:
IMPRESSION:
1. No evidence of intracranial mass or signal aberration within the brain.
2. Findings suggesting mild right hippocampal atrophy. This finding can be associated with chronic seizure disorders and clinical correlation is advised.
(5) the June 25, 2004 report of Sean M. Mahan, M.D., who reviewed an MRI of relator's thoracic region and noted as follows:
* * * There are Schmorl's nodes present in the thoracic spine which indicate the presence of degenerative disc disease, but there is no evidence for significant disc protrusion, canal stenosis or neural foraminal encroachment throughout the thoracic spine.
(6) the September 28, 2004 report of Marc A. Engel, M.D., who noted that relator had a "high-grade partial-thickness patellar chondromalacia with associated focus of subchondral bone edema," as well as "prominent degenerative changes of the proximal tibiofibular joint" relative to his right knee; and, (7) the September 28, 2004 report of Ahmed Masood, M.D., who noted that, while relator does not appear to have any significant sleep disordered breathing/sleep apnea, relator does have borderline sleep latency.
 {¶ 19} 14. Although it is not entirely clear, the parties agree that, at the hearing before the disability committee, relator was not permitted to submit the foregoing additional medical reports.
 {¶ 20} 15. The disability committee recommended that relator's disability be terminated.
 {¶ 21} 16. By letter dated January 7, 2005, relator appealed. Specifically, relator cited his inability to present additional medical evidence before the disability committee and noted that all of relator's medical conditions should be considered. At that time, relator also submitted additional medical evidence: (1) the November 24, 2004 report/office notes of Donald L. Behrmann, M.D., who noted that relator continues to have pain in both his neck and lower back and noted that relator may be a candidate for epidural blocks for his lower back; (2) the December 13, 2004 report of Charles W. Heard, Jr., M.D., who addressed relator's right knee problems, prescribed Motrin and Ketoprofen, as well as certain exercise and moist heat and recommended that relator lose some weight; and (3) the August 30, 2004 report of Brian D. Fuselier, D.D.S., who noted that relator has headaches and earaches. Dr. Fuselier opined that relator has migraine headaches without aura, masticatory myalgia, bilateral temporomandibular joint internal derangements and arthralgia.
 {¶ 22} 17. Earl N. Metz, M.D., a member of the medical review board, reviewed all of the medical evidence in the record, including the additional medical reports which relator had submitted, and specifically noted that:
None of the reports submitted by these physicians include a claim that Mr. Pretzer is disabled[.] * * * It should be noted that Mr. Pretzer's disability benefit was granted based on epilepsy. It should be noted also that "the last years" mentioned by Dr. Goodman now total about ten years. Dr. Goodman suggests that stress could cause a resumption of seizure activity and, we assume, teaching constitutes such a stress. On the other hand, it is almost inconceivable, assuming that Mr. Pretzer's seizures were indeed related to stress, that he has not had a stress in the past ten years sufficient to precipitate a seizure — just in the course of normal human encounters. One can only concluded that either the seizure focus in the brain has become quiescent or that his treatment has been effective enough to allow him to led [sic] a normal, seizure-free life.
The first question we must answer is whether or not there is anything in these reports which would necessitate additional examinations. I found no compelling findings in these reports. In fact, all four of the reporting physicians were quite restrained in their description of his various complaints.
I respect Mr. Gerhardstein's concern about the possibility that his client may have new problems which were not completely evaluated by the Retirement Board on December 10, but I believe that the material presented with Mr. Gerhardstein's January 31, letter is inadequate to justify either additional examinations or a continuation of Mr. Pretzer's disability benefits.
 {¶ 23} 18. Charles F. Wooley, M.D., another member of the medical review board, also reviewed all the medical evidence submitted and concluded as follows:
I reviewed all the new material submitted to STRS, the Memo from Dr. Metz 1 February 2005 with his review of the additional submissions, and I reviewed the entire disability retirement file. I concur with the conclusions stated by Dr. Metz-additional examinations are not required, and disability benefits should not be continued. In my opinion, Kim D. Pretzer is no longer permanently disabled and is capable of resuming of [sic] his usual teaching duties.
 {¶ 24} 19. Barry Friedman, M.D., another member of the medical review board, reviewed the additional medical records and concluded as follows:
Mr. Pretzer remains seizure free on his two-drug regimen of Depakote and Neurontin. While Mr. Pretzer has other medical concerns that have developed over the past 12 years, based on the information submitted I do not find that any of these individually or in combination represent a source of permanent disability.
Regarding Mr. Pretzer's seizure history, given the fact that he has been free of seizures since 1996 and maintains full-time employment with no driving restriction I do not feel that he is presently disabled for the performance of his previous duties as a music teacher.
 {¶ 25} 20. Evelyn E. Pintz, M.D., another member of the medical review board, also examined all the additional evidence submitted by relator and concluded that relator was no longer permanently incapacitated for the performance of his job and recommended that his disability retirement not be continued.
 {¶ 26} 21. Relator was permitted to appear before the STRB at the hearing held on May 20, 2005. A copy of the transcript is included in the record at Appendix A.
 {¶ 27} 22. By letter dated June 23, 2005, relator was notified that STRB was terminating his disability retirement. Relator was provided a copy of the STRB record of proceedings which provided, in relevant part, as follows:
Based on careful review of the entire record and of the medical evaluations of Mr. Pretzer, on June 17, 2005, it was moved by Mrs. Scott, seconded by Ms. Ramser, that the previous position of the Board be affirmed and that disability benefits be terminated.
* * *
Upon roll call the vote was as follows: Mrs. Scott, yes; Ms. Ramser, yes; Dr. Buser, yes; Ms. Fisher, yes; Dr. Puckett, yes; Dr. Brown, yes; Mr. Billirakis, yes; Mr. Endry, yes. Motion carried.
 {¶ 28} 23. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 29} In this mandamus action, relator raises the following issues: (1) it was error for the disability commission to refuse to take the additional medical evidence into the record before recommending that relator's disability retirement be terminated; and (2) STRB abused its discretion by terminating his disability retirement. For the reasons that follow, this magistrate finds that relator's arguments lack merit.
 {¶ 30} First, this magistrate notes that relator's first argument pertains to an interlocutory matter which STRB ultimately corrected. While it is true that the disability committee originally refused to permit relator to file additional medical evidence relative to the continuation of his disability retirement, STRB ultimately permitted him to file any additional medical evidence which relator wished to file. Furthermore, it is clear from the record that STRB reviewed and considered all of the medical evidence in the record, including all the additional medical evidence submitted by relator, before ultimately concluding that relator's disability retirement should be terminated. Any error which occurred at this point in the proceedings was ultimately corrected and mandamus relief would not be appropriate.
 {¶ 31} In relator's remaining argument, he asserts that STRB abused its discretion in terminating his disability retirement. The determination by STRB of whether a person is entitled to disability retirement benefits is reviewable in mandamus to correct an abuse of discretion. State ex rel. Pipoly v. StateTeachers Retirement Sys., 95 Ohio St.3d 327, 2002-Ohio-2219, at ¶ 14. The term "abuse of discretion" means an unreasonable, arbitrary or unconscionable decision. Id.
 {¶ 32} In Pipoly, the court refused to extend the mandate of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, to orders or decisions of STRB granting or denying disability retirement benefits. Accordingly, STRB has no clear legal duty cognizable in mandamus to specify the evidence it relied upon or to explain the reasoning for a decision granting or denying an application for retirement disability. Pipoly, at ¶ 22. However, where STRB presents its reasoning and evidence, its written decision is reviewable in mandamus to determine whether STRB has abused its discretion. State ex rel. Bruce v.State Teachers Retirement Bd. of Ohio, 153 Ohio App.3d 589,2003-Ohio-4181, distinguishing Pipoly. In the present case, STRB decided to terminate relator's disability retirement without identifying the evidence upon which it relied or providing any reasoning.
 {¶ 33} Members of the State Teachers Retirement System can apply for disability coverage as provided in R.C. 3307.62 as follows:
(A) The state teachers retirement system shall provide disability coverage to each member participating in the plan described in sections 3307.50 to 3307.79 of the Revised Code who has at least five years of total service credit.
* * *
(B) Application for a disability benefit may be made by a member, by a person acting in the member's behalf[.] * * *
* * *
(C) Medical examination of the member shall be conducted by a competent, disinterested physician or physicians selected by the board to determine whether the member is mentally or physically incapacitated for the performance of duty by a disabling condition, either permanent or presumed to be permanent for twelve continuous months following the filing of an application. * * *
(D) Application for a disability benefit must be made within two years from the date the member's contributing service terminated, unless the board determines that the member's medical records demonstrate conclusively that at the time the two-year period expired, the member was physically or mentally incapacitated for duty as a teacher and unable to make application. * * *
(E) If the physician or physicians determine that the member qualifies for a disability benefit, the board concurs with the determination * * * the member shall receive a disability benefit under section 3307.63 or 3307.631 of the Revised Code. If such physician or physicians determine that the member does not qualify for a disability benefit, the report of the examiner or examiners shall be evaluated by a board of medical review composed of three physicians appointed by the retirement board.
(F) The state teachers retirement board shall render an order determining whether or not the applicant shall be granted a disability benefit. Notification to the applicant shall be issued, and upon the request of an applicant who is denied a disability benefit, a hearing or appeal relative to such order shall be conducted in accordance with procedures established by the retirement board.
(G) The state teachers retirement board shall adopt rules requiring each disability benefit recipient, as a condition of continuing to receive a disability benefit, to agree in writing to obtain any medical treatment recommended by the board's physician and submit medical reports regarding the treatment. * * *
 {¶ 34} Relator filed his application for disability retirement benefits and that application was originally granted in 1992. Thereafter, R.C. 3307.64 provided for the continuation of benefits and explained the procedure whereby relator's benefits could be terminated. R.C. 3307.64 provides, in relevant part, as follows:
A disability benefit recipient * * * shall retain membership in the state teachers retirement system and shall be considered on leave of absence during the first five years following the effective date of a disability benefit.
The state teachers retirement board shall require any disability benefit recipient to submit to an annual medical examination by a physician selected by the board, except that the board may waive the medical examination if the board's physician certifies that the recipient's disability is ongoing. * * *
After the examination, the examiner shall report and certify to the board whether the disability benefit recipient is no longer physically and mentally incapable of resuming the service from which the recipient was found disabled. If the board concurs in a report by the examining physician that the disability benefit recipient is no longer incapable, the payment of a disability benefit shall be terminated not later than the following thirty-first day of August or upon employment as a teacher prior thereto. If the leave of absence has not expired, the board shall so certify to the disability benefit recipient's last employer before being found disabled that the recipient is no longer physically and mentally incapable of resuming service that is the same or similar to that from which the recipient was found disabled. * * *
 {¶ 35} Supplementing the Ohio Revised Code provisions is Ohio Adm. Code 3307:1-7-05 which provides, in relevant part, as follows:
The following procedures are hereby established for the review and appeal of any denial or termination or proposed denial or termination of benefits:
(A) Preceding board action:
(1) At least seven days before a recommendation is presented to the retirement board, written notification shall be issued to the applicant or recipient. This notice shall include:
(a) The recommendation to be presented to the board.
(b) The right to provide additional objective medical evidence not previously considered by the independent medical examiner or the medical review board. Additional evidence may be presented by the applicant or recipient, counsel for the applicant or recipient, and/or a party of interest, attending physician, or it may be presented in writing.
* * *
(B) Following board action terminating or denying disability benefits:
(1) The applicant or recipient will be informed in writing of the action taken by the board. Notification shall include:
(a) Confirmation that the applicant or recipient had the right to present additional medical evidence[.] * * *
* * *
(c) A statement explaining that written notice of appeal must be filed with the retirement system no later than fifteen days of notification of denial or termination.
(d) An explanation of the procedures and limitations applicable to the adjudication hearing upon appeal[.] * * *
* * *
(f) An explanation of future rights and limitations upon the rights to again apply for disability benefits if an appeal is not pursued.
* * *
(3) Scope and procedure upon appeal:
(a) The appellant may appear in person, be represented by counsel and/or an attending physician, or may present the information, positions, contentions and arguments in writing.
* * *
(d) The purpose of the adjudication hearing upon appeal shall be for the appellant to present objective and pertinent evidence to the board substantiating the claim that the eligibility requirements of section 3307.62 of the Revised Code have been met and that the appellant is medically incapacitated from the performance of regular duties by a mental or physical condition that is permanent or presumed to be permanent.
* * *
(f) Upon consideration of the record on appeal and the information, positions, contentions and arguments of the appellant, the retirement board may direct further examination or testing by independent medical examiners and may return a record for review and recommendation by the medical review board.
(g) When the retirement board is satisfied that the record before it is complete and has completed its deliberations, it shall affirm, disaffirm or modify its prior action. Written notice of such action shall be given to the appellant.
(h) A stenographic record of the adjudication hearing will be made only upon request of the appellant. Such request must be made at least seven days in advance of the hearing. A taped record will be made if a stenographic record is not requested.
 {¶ 36} It is clear from the record that, with the exception of the proceedings before the disability committee, which were interlocutory in nature and which this magistrate has already addressed, the procedures before STRB followed the requirements of the law as above indicated. It is relator's contention that STRB has misconstrued the August 4, 2004 report of Dr. Conomy and that the board failed to address his additional medical conditions.
 {¶ 37} Upon review of the record, the magistrate notes that none of the doctors whose reports relator submitted into evidence before STRB opined that relator was incapacitated from the performance of his duties. Dr. Goodman noted that relator had not had a seizure for ten years, but that stress could bring about a seizure. Relator testified before STRB that he believed that returning to a teaching role would be very stressful for him and it was his fear that that level of stress would trigger another seizure. Relator submitted other medical evidence and testified himself that his neck and back are sore, his right knee is sore, and he suffers from headaches and IBS. Relator testified that his current job working in a self-employed capacity permits him the flexibility not only to utilize restroom facilities whenever it is necessary, but, also, permits him to take whatever time off from work he may need in the event that he is not feeling well. Relator is concerned that, if he were to return to the classroom, that job would not be flexible enough to accommodate his current needs and, as such, asked STRB to find that he continued to be disabled.
 {¶ 38} The magistrate finds that it was not an abuse of discretion for STRB to refuse to conclude, based upon relator's medical evidence and his testimony, that he remained disabled. STRB could have relied upon that evidence and determined that he was still disabled; however, because none of the doctors certified that he was disabled from performing his duties as a teacher, it was not an abuse of discretion for STRB not to reach this conclusion.
 {¶ 39} The issue comes down to whether or not Dr. Conomy's report constitutes some evidence upon which STRB could have relied in terminating his disability retirement benefits. The last paragraph of Dr. Conomy's August 4, 2004 report provides as follows:
At this point, it is my opinion that Mr. Pretzer is no longer disabled. Return to work, however, is another matter. He has not had seizures in eight years and his seizures are well controlled. On the other hand, he has had substantial injuries with attacks. Given his degree of medical management I do not see any restriction to be placed on him now and including work, because of his seizure disorder. He should not work at heights and with dangerous instrumentality such as moving equipment. These things do not bear upon his teaching role or his work as a travel agent.
Upon review, this magistrate concludes that Dr. Conomy did indeed opine that relator was capable of going back to work as a teacher provided that he did not work at heights or with dangerous instrumentalities such as moving equipment. The magistrate concludes that relator's argument that "moving equipment" means that Dr. Conomy indicated that he could not move equipment is inaccurate. The magistrate notes that Dr. Conomy was referring to the dangerous instrumentality of "moving equipment" which is synonymous with equipment that is moving, and not the act of physically moving a piece of equipment. Furthermore, while Dr. Conomy did note that relator could not work at heights, the only evidence that relator worked at heights were his own statements that he stood on scaffolding to view and direct the band. Nothing in the records from the school district indicate that that was a part of relator's job duties. In conclusion, the magistrate finds that Dr. Conomy's report does constitute some evidence upon which STRB could have relied in determining that relator was no longer entitled to disability retirement.
 {¶ 40} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that STRB abused its discretion in terminating his disability retirement benefits and this court should deny relator's request for a writ of mandamus.